**2015-1599**

# United States Court of Appeals
# for the Federal Circuit

SYNOPSYS, INC., a Delaware Corporation,

*Plaintiff - Appellant,*

v.

MENTOR GRAPHICS CORPORATION, an Oregon Corporation,

*Defendant – Appellee.*

*On Appeal from the United States District Court for the Northern District of California, No. 3:12-cv-06467, Judge Maxine M. Chesney*

## NON-CONFIDENTIAL BRIEF OF DEFENDANT-APPELLEE MENTOR GRAPHICS CORPORATION

JOHN D. VANDENBERG
PHILIP WARRICK
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com
philip.warrick@klarquist.com

*Counsel for Defendant-Appellee Mentor Graphics Corporation*

SEPTEMBER 11, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Synopsys, Inc. v. Mentor Graphics Corporation, 2015-1599

## CERTIFICATE OF INTEREST

Counsel for the Appellee, Mentor Graphics Corporation. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Mentor Graphics Corporation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

John D. Vandenberg, Philip Warrick, Andrew M. Mason, James E. Geringer, Jeffrey S. Love, Kristin L. Cleveland, Mark W. Wilson, Patrick M. Bible, Salumeh R. Loesch, Stephen J. Joncus, George A. Riley, Mark E. Miller, Diana C. Rogosa, Elizabeth Offen-Brown Klein, Luann L. Simmons, Michael Sapoznikow, Robin M. Wall, KLARQUIST SPARKMAN, LLP, and O'MELVENY & MYERS LLP.

| | |
|---|---|
| September 11, 2015 | /s/ Philip Warrick |
| Date | Signature of counsel |
| | |
| | Philip Warrick |
| | Printed Name of Counsel |

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES ....................................................1

INTRODUCTION ..................................................................................2

I.  STATEMENT OF THE CASE ...........................................................3

   A.  Background Of Relevant Subject Matter.......................................3

      1.  Boolean Algebra And Logic Elements.......................................3

      2.  Skilled Artisans Could Infer Logic Elements ...........................5

   B.  The Three Patents-In-Suit. ............................................................6

   C.  The Asserted Claims. ..................................................................11

      1.  The Claimed Method Translates Functional
         Descriptions Of Intangible Logic Elements ...........................11

      2.  The Claimed Method Generates An Intangible,
         Translated Description, Not A Physical Circuit.......................13

   D.  The District Court's Claim Constructions Added
      No Physical Element Or Act To The Claimed Methods ...........14

   E.  No Facts Or Claim Constructions Were Disputed
      On The Cross Motions For Summary Judgment ......................15

   F.  The District Court's Summary Judgment Decision....................17

      1.  The District Court Relied On Undisputed Facts In The Record .............17

      2.  The District Court Placed The Burden Of Proof On Mentor ...................18

      3.  The District Court Applied The *Mayo / Alice* Framework ......................18

II.   SUMMARY OF THE ARGUMENT .............................................20

III.  STANDARD OF REVIEW ...........................................................22

IV.  ARGUMENT ...............................................................................22

   A.  Synopsys Has Waived Any Factual
      Disputes Or Claim Construction Arguments ...........................22

B.   The District Court Correctly Determined That The Asserted
Patent Claims Encompass Patent-Ineligible Subject Matter ......................25

1.   The *Mayo / Alice* Framework .....................................................25

2.   *Mayo / Alice* Step One: The Claimed Idea Is Abstract ...........................28

   a)   Each Claim Is Directed To An Abstract Idea .......................................28

   b)   The Claimed Idea Closely
Resembles The Abstract Idea In *Benson* ...............................................29

   c)   The Claimed Idea Closely
Resembles The Abstract Idea In *Digitech* .............................................32

   d)   The Claims Are Directed To An Idea
Having No Particular Concrete Or Tangible Form .............................34

   e)   The Claims Are Directed To A Mental Process .....................................35

3.   *Mayo / Alice* Step Two: The Claims Add
No Inventive Concept To Their Abstract Idea ........................................38

   a)   The Claims Add Nothing To Their Abstract Idea ................................38

   b)   The Claims Preempt Their Abstract Idea..............................................39

   c)   The Claims Are Unlike Those In *Diehr* And *DDR Holdings*...............40

   d)   The Claims Fail The Particular
Machine-Or-Transformation "Clue" ....................................................44

C.   Synopsys Defends Imagined Claims With Incorrect Law...........................45

1.   Claim 1 Requires Neither A Computer Nor
Descriptions Of Complex Integrated Circuits ......................................45

2.   An Idea's Specificity Does Not Negate It Being Abstract.......................49

3.   An Idea's Novelty Does Not Negate It Being Abstract ..........................51

4.   An Idea's Potential Utility Does Not Negate It Being Abstract .............52

5.   Step Two Trains On The Added
Elements, If Any, Not The Abstract Idea Itself....................................53

6.   Preemption Of The Claim's Idea In Some Field Is
A Concern; Not Preemption Of Alternatives To The Idea ....................54

7.   The Supreme Court Has Not Mandated That
The Abstractness Exclusion Be "Construed Narrowly" .........................56

CONCLUSION ....................................................................................56

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by the district court has been redacted. Specifically, the material omitted on pages 5, 6, 7, 10, 12, 14, 16, 17, 25, 31, 33, 41, 46, and 48 contains references to information that has been designated confidential by the parties. Specifically, each of the pages cited above contains information that was sealed in the district court and requires continued confidential treatment in this Court.

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ............................................................23

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ............................................................. passim

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................22

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107 (2013) .................................................... 26, 51, 52, 55

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
689 F.3d 1303 (Fed. Cir. 2012) ....................................... 25, 35, 39, 53

*Bilski v. Kappos*,
561 U.S. 593 (2010) .............................................................. 44, 50, 55

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........................................ 28, 43, 49, 51

*Chattler v. United States*,
632 F.3d 1324 (Fed. Cir. 2011) ..........................................................22

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ..........................................................23

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ..........................................................29

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ........................................ 35, 36, 37, 45

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ................................................. passim

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................. passim

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ................................................. passim

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ................................................................... passim

iv

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) ............................................................45

*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*,
   774 F.3d 755 (Fed. Cir. 2014) ................................................ 52, 53, 55

*Int'l Union of Bricklayers v. Martin Jaska, Inc.*,
   752 F.2d 1401 (9th Cir. 1985) ...........................................................23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................. 26, 28, 35

*Kennecott Corp. v. Kyocera Int'l, Inc.*,
   835 F.2d 1419 (Fed. Cir. 1987) .........................................................23

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ............................................................. passim

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) .........................................................55

*Parker v. Flook*,
   437 U.S. 584 (1978) ................................................................. passim

*Planet Bingo, LLC v. VKGS LLC*,
   576 Fed. App'x 1005 (Fed. Cir. 2014) .................................... 32, 35, 49

*Schmidt v. Contra Costa Cnty.*,
   693 F.3d 1122 (9th Cir. 2012) ...........................................................22

*TQP Dev., LLC v. Intuit Inc.*,
   No. 2:12-cv-180-WCB, 2014 WL 651935 (E.D. Tex. Sept. 3, 2014) ................44

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .................................................. passim

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015) ................................................. passim

**Statutes**

35 U.S.C. § 101 ............................................................... passim

35 U.S.C. § 282 ...............................................................18

**Rules**

Fed. R. Civ. P. 56 ..............................................................22

## <u>STATEMENT OF RELATED CASES</u>

In addition to this appeal, Plaintiff-Appellant Synopsys, Inc. ("Synopsys") is appealing two other decisions, one from the District of Oregon (Appeal Nos. 15-1470, -1554, -1556) and one from the United States Patent and Trademark Office (Case No. IPR2014-00287; appeal not yet docketed). At Synopsys's request, Appellant Br. vii, this Court ordered that the same merits panel hear this appeal and the Oregon appeal. ECF No. 28. But, there is no overlap in the (a) asserted patents, (b) patent families, or (c) legal issues. For example, the sole issue here—the abstractness exclusion under *Mayo / Alice*—is not an issue in the Oregon appeal.

# **INTRODUCTION**

In the field of logic-circuit design, logic-circuit designers use schematics, functional descriptions, and a branch of mathematics called Boolean algebra to describe abstract "logic elements" that might or might not be fabricated as part of a current-carrying logic circuit. The patent claims-in-suit recite methods for translating one functional description of a logic element into another functional description of the same logic element. The claims-in-suit do not relate to the physical fabrication of circuits. They address only the conceptual stage of circuit design.

The functional descriptions of logic elements recited in the claims describe the conditions under which a Boolean variable takes on its Boolean truth values (*viz*., False or True). The entire claimed translation of functional descriptions may occur in a logic designer's mind. No claim requires any use of the functional descriptions. The claims-in-suit do not require transmitting or storing the translated description for possible future use. No claim requires making or using anything physical. For example, no claim requires a computer, or computer-readable medium, or a current-carrying logic circuit.  Everything recited in these claimed methods is intangible.

Nor does any claim require that the description be complex. For example, no claim requires more than a short functional description of a single logic element such as the patents' exemplary four-line description in Table 8, which both parties have linked to the representative patent claim on appeal. It is undisputed for each claim-

2

in-suit that a skilled artisan can perform the entirety of the claimed method in mere minutes mentally or with pencil and paper. Indeed, that is how each example in the patents was created: the inventors did the translations by hand without using a programmed computer.

Based on the undisputed facts and uncontested claim constructions, the district court correctly applied the *Mayo / Alice* framework to these purely abstract claims and correctly concluded that their methods are patent ineligible. Its judgment should be affirmed.

## I.     STATEMENT OF THE CASE

### A.     Background Of Relevant Subject Matter

#### 1.     Boolean Algebra And Logic Elements

The Boolean branch of algebra uses truth values instead of numbers. A Boolean variable takes one of two possible truth values, either False or True. The variable typically is represented by a symbol (e.g., "Q"), and the values False and True are denoted by the logic values (not numbers) "0" and "1," respectively. "Logic functions" (also known as "logic operations") define the logic relations between two or more Boolean variables. For example, the basic logic function "AND" defines the logic relations among three Boolean variables as follows: Q is True only if both A and B are True. The output value Q of the basic logic function "OR" is True if either

A or B (or both) is True. *See* JA1825–29 (Tutorial Tr. 46:3–50:21); JA6159–60 (Blanton Decl. ¶¶ 10–11); Appellant Br. 4–5.

Boolean algebra is central to how logic-circuit designers think of logic circuits. For example, the representative patent claim in this case, claim 1 of U.S. Patent No. 5,530,841 ("the '841 patent"), refers to a functional description of a common logic circuit called a "latch." A latch defines the logic relations among two input variables and a single output variable, as do the AND and OR logic functions. But, unlike "AND" and "OR," a latch's output variable value may depend on its previous output value. Colloquially, it can remember, or "latch onto," its previous value in certain cases. For this reason a latch may be called a "memory element." *See* JA1829–31 (Tutorial Tr. 50:22–52:21).

More specifically, a latch's output variable Q has the same value (True or False) as its input value D (for "data") when its second input value COND (for "condition") is True. But, when COND is False, then output Q maintains its former value, even if the value of input D has changed. In other words, changes to the input data value D will pass through the latch element as changes to its output Q only when the condition COND is True, as illustrated at JA6160–61 (Blanton Decl. ¶ 12). *See also* JA2858–59 (Sarrafzadeh Decl. ¶ 133). This logical relationship can be described in many ways, including a Boolean equation, a "hardware-independent

*Confidential Material Redacted*

description" as in Table 8 of the '841 patent, a set of "assignment conditions" as in

Table 9, and a schematic as in Figure 8B. *See* JA39; JA66 (21:45–22:45).

### 2.   Skilled Artisans Could Infer Logic Elements

Well before the alleged invention, logic-circuit designers understood the logic

functions of common logic elements such as a latch. They could read a description

of a logic function and infer what logic element it required and thus described. *E.g.*,

JA2972 (Thomas Dep. 60:9–18) ████████████████████████████

███████ . For example, a designer looking at the below-depicted four-line description

(copied from Table 8 of the '841 patent, JA66 (21:49–57)) ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

```
If( COND)
Q: = D
else
endif
```

As Synopsys told the district court: "A person could take a very simple,

several line, several pages of code and look through it and say, okay, I see what's

happening with that signal, and I think what I need here is a latch." JA2043 (SJ Hr'g

Tr. 23:18–24). Skilled artisans knew what logic elements were needed because the

descriptions are "hardware independent user descriptions of the operations *requiring*

those … elements." Appellant Br. 33 (emphasis added).

*Confidential Material Redacted*

The same is true for each logic element example in these patents. Synopsys's expert, Dr. Donald E. Thomas, Jr., testified that for each example in the patents, in 1989 (before the alleged invention), he personally could have read the description of the logic function, inferred what logic element was being described, and manually described the same logic element in a different form. JA2972–75 (Thomas Dep. 60:4–23, 122:15–124:18); *see also* JA2991 (Sarrafzadeh Decl. ¶ 108(f)).

## B. The Three Patents-In-Suit

The patents-in-suit relate to descriptions of "logic elements." Appellant Br. 31. These descriptions are called "hardware independent" because they describe the operations of the logic circuit but do not "instantiate" or "specify" any particular hardware components or structure (e.g., transistors, resistors, or capacitors) of the logic circuit. *See id.* at 18. Instead, as the '841 patent explains, these descriptions are more abstract: "A hardware description language provided the designer with a means for describing the operation of the desired logic circuit that was at least one level of abstraction removed from a schematic diagram or a set of boolean logic equations." JA56 ('841 patent 1:50–55); *see also* JA2230–31 (SJ Hr'g Tr. 109:25–110:15); ██████████████████████████████ They also are called "operational" and "functional" descriptions because they describe the logic operation or function required of the logic element. *E.g.*, JA63 ('841 patent 15:33–38); JA3198 (24:10–13); ████████████████████████ *see also* Appellant Br. 8 ("specifying the

*Confidential Material Redacted*

operation or function"), 10 ("operational descriptions"), and 11 ("operational characteristics").

On this point, the patent's terminology might be misleading to those outside the field. The same term, "logic circuit," may refer either to a physical thing or to an abstract design concept, depending on the context. *See, e.g.*, JA2969–70 (Thomas Dep. 57:8–58:7). The patents-in-suit are directed to design—not fabrication—and therefore use "logic circuit" to refer to an abstraction that may or may not later guide fabrication of a physical, current-carrying circuit.[1] JA2988 (Sarrafzadeh Decl. ¶¶ 101–02) ███████████████████████████████████████████████

██████████ As characterized by Synopsys, the logic operations described in the claimed methods are "potential operations of a circuit element." Appellant Br. 12.

The patents-in-suit's hardware-independent descriptions consist of "directive statements" and "flow-control statements." "A directive statement is any statement that contains arithmetic operators (+, -, *, /), boolean operations, (e.g. AND, OR, XOR, NOT), or any operation that combines or manipulates data values." JA61 ('841 patent 11:10–13). "A flow control statement, as the name suggests, controls the processing of statements in the set of statements that constitute description 110." *Id*. (11:18–20).

---

[1] This is undisputed. Synopsys's case depends on this reading of "logic circuit" because the accused software of Appellee Mentor Graphics Corporation ("Mentor") creates *descriptions* of logic elements, not physical, current-carrying circuits.

While the patents-in-suit concern such hardware-independent descriptions of a logic element, they do not address *creating* such descriptions. Rather, they describe taking an existing description of a logic element's logic function and converting it to another form of representation—i.e., translating it. The existing hardware-independent description is translated into one or more intermediate forms of description and then to a final form of description. The existing description, intermediate translated description(s), and final translated description are simply different ways of characterizing or representing the same logic function.

The patents provide many examples of such translations. One corresponds to the claim that the parties have agreed is representative—claim 1 of the '841 patent. This example appears at Tables 8 and 9, and Figure 8B of the patent, and is partly reproduced at page 14 of Synopsys's brief, which describes Figure 8B as "the corresponding circuit elements" to the "operational characteristics" of Table 8. *See also* JA2986–87 (Sarrafzadeh Decl. ¶¶ 96–97); JA2996–99 (¶¶ 110–14). Below is a demonstrative that Mentor presented at the summary judgment hearing adding labels to this representative example:



JA8177 (slide 9).

The existing description of the logic element's function is shown in Table 8. Synopsys describes a similar four-line description example in the patent as "a simple user description." Appellant Br. 17. Table 8 describes this logic function: IF COND = True, Then Q = D; Else Q = Q. As is true of all examples in the patents, it is "hardware-independent" because it describes the logic function (logic operation) of a logic element, not the structure or components of a physical circuit. This example's intermediate, translated description of the same logic-element function is shown in Table 9. It consists of six "assignment condition" values, four of which are logic "0" (False). It too is a functional description, as these assignment-condition values

*Confidential Material Redacted*

describe the function of a logic element, not its structure or components. They describe the logic element by identifying the conditions, if any, under which the logic element performs certain logic functions for this variable Q. This example's final, translated description is Figure 8B's schematic of the same logic element.[2] It depicts a "latch," the same logic element whose logic function is described in Tables 8 and 9. *See* JA66 ('841 patent 21:45–22:45). Like the initial and intermediate descriptions, this final, translated description is "technology independent." Appellant Br. 10. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

   The patents provide 25 similar examples of translating an existing functional description of a logic element into an intermediate description and then into a schematic of the same logic element. Not one of these exemplary translations was created using a computer. ████████████████████████████████████

████████████████████████████████████████

---

[2] More precisely, Figure 8B results from an "optimization" step in which two assignment conditions are "boolean minimized," JA66 (22:24–36), but the claims do not recite that step, and each party has pointed to Figure 8B as the output of the claimed method when applied to the four-line description of Table 8. *See, e.g.*, Appellant Br. 14.

### C. The Asserted Claims

#### 1. The Claimed Method Translates Functional Descriptions Of Intangible Logic Elements

Mentor agrees with the district court and with Synopsys that claim 1 of the '841 patent, JA86–87 (62:61–63:12), is "representative." Appellant Br. 15; JA9 (SJ Order 3). Below is the demonstrative Mentor presented at the summary judgment hearing labeling portions of this representative claim:



JA8177 (slide 10).

This claim begins with an existing "hardware independent user description" of a logic element. As Synopsys explained to the district court, this initial description

*Confidential Material Redacted*

describes the logic element at a "level of abstraction." JA2230–31 (SJ Hr'g Tr. 109:25–110:15); JA3227; *see also* JA56 ('841 patent 1:47–55) (disclosing that "hardware description language provided the designer with a means for describing the operation" at a "level of abstraction"); ████████████████████████ ██████████████████████ The claimed method does not create this initial description of the logic element, nor even receive it as part of the method. Instead, the claim's preamble asserts the existence of this hardware-independent description of the logic element, without restricting how it came into existence.

The first step of the claimed method ("converting …") translates this existing description into values for two assignment conditions. The district court construed "assignment condition" as "the condition under which the hardware description function is true for a particular variable in the user description." JA22. These values for the two assignment conditions, called "AL(Q)" and "AD(Q)," represent another way of thinking of and describing the same logic function described in the initial description.

The second and final step of this claimed method ("generating …") translates this assignment-condition representation to the method's final description of the logic element. The "wherein" and two following clauses correlate this final description to the assignment-condition values of the intermediate description. This second translation step describes the same logic function in a different form. As

Synopsys says, the existing hardware-independent descriptions describe logic operations "requiring" the logic element. Appellant Br. 33. The claimed translation simply describes the required logic element in different ways. And, as Synopsys says, this translated description is "technology independent." *Id.* at 10.

The claim does not specify the form of this final description. It may be a schematic of the logic element—as in each example in the patents—or some other form. Nor does the claim specify the form of the existing functional description or the intermediate assignment-condition representation of the logic element. It does not, for example, specify whether these descriptions are written or oral or thoughts or stored in a non-transitory, tangible medium.

## 2. The Claimed Method Generates An Intangible, Translated Description, Not A Physical Circuit

Synopsys's brief describes a "practical application" for logic circuits, Appellant Br. 5, but these claims recite no such practical application. For example, representative claim 1 of the '841 patent does not recite using, or even transmitting, displaying, copying, or storing the method's final description of the latch logic element. Instead, the claimed method ends as it begins, with an intangible description. The entire translation method may take place in one's mind.

**Confidential Material Redacted**

In other contexts, the claim's reference to "generating" a latch and to "signals" might suggest fabricating a physical circuit capable of carrying electrical signals. But, that is not the case here. *See* JA2988 (Sarrafzadeh Decl. ¶¶ 101–02). This is undisputed. ███████████████████████████████████████

████████████████████████████████████████████

### D.   The District Court's Claim Constructions Added No Physical Element Or Act To The Claimed Methods

The district court conducted *Markman* proceedings and construed multiple claim terms. *See* JA18–27 (Claim Construction Order). The court mostly adopted Synopsys's proposed claimed constructions. Neither party proposed, nor did the district court adopt, any claim construction requiring:

- a computer or computer element;

- any other tangible machine or article;

- a "synthesis tool" or other software;

- automation;

- a description of more than a single logic element; or

- a physical act.

*See* JA18–27; JA2395–422 (Synopsys Claim Construction Statement); JA2375–94 (Revised Exhibit A to Claim Construction Statement).

### E.    No Facts Or Claim Constructions Were Disputed On The Cross Motions For Summary Judgment

After the close of discovery, the parties cross moved for summary judgment on whether the asserted claims are invalid under 35 U.S.C. § 101. *See* JA12 (SJ Order 6) ("Mentor contends the claims at issue cover patent-ineligible abstract ideas and that there are no additional elements transforming the abstract ideas into patent-eligible applications of such ideas. Synopsys argues to the contrary.").

On these cross motions for summary judgment, Synopsys did not seek any revised or new claim construction. For example, Synopsys did not ask the district court to construe the claims as requiring a computer. When the district court asked Synopsys to respond to Mentor's point that the claims do *not* require a computer, Synopsys agreed: "It is true, computers aren't called out. And the case law makes clear that if we threw in an element, oh, and do it on a computer, that wouldn't matter at all. That's really a red herring argument." JA2079–80 (SJ Hr'g Tr. 59:23–60:6).

Both parties alleged that there were no genuinely disputed material facts. JA2943; JA3208; JA3212; JA6304–05. Mentor's motion identified a single fact as being "material" to its motion: "A skilled designer in this field can perform entirely in her mind, aided by pencil and paper, each step of each method claimed in the asserted patent claims." JA2934; *see also* JA2935–36. Synopsys conceded this point to the district court, with a qualifier: "Synopsys is claiming a several-step manipulation of data, that can be performed in the human mind or with pencil and

paper only in its most simplistic form." JA5631 (internal quotation marks omitted).

Synopsys also characterized the claimed methods as "inferring" from "statements"

in a "description" at a "level of abstraction." JA3210–11; JA3222; JA3226–27.

To establish that skilled artisans can perform the claimed method with pencil

and paper, Mentor presented the testimony of both named inventors, an expert for

Synopsys, and an expert for Mentor. Mentor's expert, Dr. Majid Sarrafzadeh,

explained that, for each exemplary hardware-independent description in the patents,

a skilled designer could perform the claimed methods by hand in a matter of minutes.

JA2983–3016 (Sarrafzadeh Decl. ¶¶ 79–81, 94, 112–30, 156, 194). █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

There was no contrary evidence on this point. No witness testified that a

skilled artisan needed more than a pencil and paper to perform the entirety of the

*Confidential Material Redacted*

methods of the claims-in-suit for each example in these patents. Synopsys's brief contends otherwise, indicating (or at least implying) that Mentor's expert testified that the method claimed by '841 patent claim 1 requires a computer. Specifically, at the end of a sentence purporting to describe the method of claim 1, Synopsys appends this footnote: ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ But, that quoted testimony of Dr. Sarrafzadeh is not addressing this claim, or this patent, or this case. It is from the Oregon case, about a different patent and different patent claim referring to "synthesis," "instrumentation," and other claim limitations not found in the claims Synopsys asserted in this California action. *See* JA5392; JA5428–29.

### F.     The District Court's Summary Judgment Decision

#### 1.     The District Court Relied On Undisputed Facts In The Record

In deciding the cross motions for summary judgment, the district court relied on undisputed facts of record: "The facts … are derived from the patents and the declarations submitted by the parties, and are undisputed." JA8 (SJ Order 2 n.3). These undisputed facts recited by the district court include the following:

> Each of the steps in the claimed methods can be performed by a skilled designer either mentally or with pencil and paper, and the examples in the patents were created by the inventors without use of a computer.

17

Although the claims themselves do not expressly call for a computer or other piece of equipment, the method is primarily intended for use with a computer, and the patents append source code for a computer program implementing the claimed inventions.

[T]he claimed methods do not require complex calculations; as noted, the claimed steps were performed mentally by the inventors and can be performed by a skilled designer either mentally or with the aid of a pencil and paper.

JA9–13 (SJ Order 3–4, 7).

## 2.    The District Court Placed The Burden Of Proof On Mentor

The district court acknowledged that Mentor has the burden of proving invalidity: "as patents are presumed to be valid, *see* 35 U.S.C. § 282, an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence." JA11 (SJ Order 5). The court did not shift that burden of proof to Synopsys. It did not, for example, hold that mental processes are "presumptively patent ineligible." *See* Appellant Br. 34. On the contrary, the district court expressly recognized that "[a]n invention is not necessarily ineligible for patent protection because it involves an abstract idea." JA14 (SJ Order 8).

## 3.    The District Court Applied The *Mayo / Alice* Framework

The district court acknowledged and applied the Supreme Court's "framework" for determining patent eligibility. JA11 (SJ Order 5) (citing *Alice*

*Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)). At step one of the *Mayo / Alice* analysis, the district court concluded that the asserted claims "are directed to an abstract idea." JA13 (SJ Order 7). The claimed methods "do not entail anything physical," "can be performed mentally" "or with the aid of a pencil and paper," "do not require complex calculations," "describe, in essence, various algorithms," and "are directed to a mental process." JA12–13 (SJ Order 6–7).

The court rejected as contrary to law several Synopsys contentions related to step one. It dismissed Synopsys's contention that the claims describe "concrete steps," noting the "abundance of Supreme Court and Federal Circuit authority" invalidating claims having "concrete steps." JA12 (SJ Order 6). It rejected Synopsys's contention that Section 101 excludes only "simple" abstract ideas, noting Synopsys's failure to identify any authority supporting the patent eligibility of "complex" abstract ideas. JA13 (SJ Order 7). The district court likewise dismissed as contrary to law Synopsys's reliance in step one on the purported novelty of the idea, its "building blocks" theory allegedly permitting patenting of "narrow" or "specific" abstract ideas, and its argument that the claims merit patent protection because "previously a designer would not have followed the exact same thought process." JA13–16 (SJ Order 7–10).

At step two of the *Mayo / Alice* analysis, the district court concluded that "the asserted claims in the Gregory patents lack the inventive concept necessary to transform a patent-ineligible abstract idea into a patent-eligible invention." JA17 (SJ Order 11). The court addressed and dismissed various additional arguments advanced by Synopsys. For example, it rejected Synopsys's reliance on the asserted novelty of the claimed idea as distinct from the required "inventive concept" inquiry of step two. JA14 (SJ Order 8). And it rejected Synopsys's argument that failure to preempt the entire field of "logic synthesis" satisfied Section 101, citing *Mayo*'s "bright-line prohibition" against patenting abstract ideas, even narrow ones. JA14–15 (SJ Order 8–9) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012)). It also rejected Synopsys's contention that the claims-in-suit meet the machine-or-transformation test. JA16–17 (SJ Order 10–11).

## II.    <u>SUMMARY OF THE ARGUMENT</u>

The district court correctly held the claims-in-suit invalid under the *Mayo / Alice* framework for evaluating patent eligibility under Section 101.

Applying step one of *Mayo / Alice* to these claims is straightforward. The claims are directed to the abstract idea of translating an existing functional description of an intangible logic element into its corresponding assignment-condition description, and then into yet another abstract description of the same logic element. This idea is abstract for the same reasons that the claimed ideas in *Benson*,

*Digitech*, and many other governing precedents are abstract. For example, this idea does not depend on any particular machine, but instead can be performed mentally aided by pencil and paper. And, the claims are directed to this idea itself rather than to a tangible instantiation or application of the idea.

Applying step two of *Mayo / Alice* also is straightforward because the claims add nothing to their abstract idea. Each step of the claimed method is abstract. The claimed methods are entirely and purely abstract. This explains why Synopsys in the district court and again in its opening brief on appeal failed to identify any element *added to* the translation idea. There is none. As the claims add nothing to their abstract idea, necessarily they add no "inventive concept" as required by step two.

This appeal presents only this narrow legal question of subject matter eligibility. Neither in the district court nor in its opening brief on appeal did Synopsys assert the existence of either a genuinely disputed material fact or a claim-construction dispute.

Synopsys's opening brief defends imagined claims that are unlike those actually before the Court, with a series of legal propositions that this Court and the Supreme Court have rejected. For example, Synopsys contends repeatedly that the claims-in-suit require a computer—citing testimony about a different claim in a different patent and different lawsuit—but it conceded to the district court that they do not. As another example, Synopsys contends repeatedly that novelty of an idea

*per se*—as distinct from novelty of its application—satisfies Section 101, but the Supreme Court and this Court have rejected that notion expressly.

The district court applied the correct law to the actual claims-in-suit to reach the correct result, and its judgment should be affirmed.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when, drawing all justifiable inferences in favor of the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This Court reviews a grant of summary judgment under the law of the regional circuit. *Chattler v. United States*, 632 F.3d 1324, 1327 (Fed. Cir. 2011). The Ninth Circuit reviews a grant of summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party," to determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012) (internal quotation marks omitted).

## IV.    ARGUMENT

### A.    Synopsys Has Waived Any Factual Disputes Or Claim Construction Arguments

Synopsys has significantly narrowed the scope of this appeal by waiving any argument for reversal based on either an erroneous claim construction or an

erroneous reliance on a genuinely disputed material fact. Synopsys waived these arguments by not making them in the district court or in its opening brief on appeal.

Absent exceptional circumstances, a party who does not allege a genuine dispute of material fact to the district court cannot make such an assertion for the first time on appeal. *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). This is especially true where the party conceded the point at the district court. *Kennecott Corp. v. Kyocera Int'l, Inc.*, 835 F.2d 1419, 1420 n.3 (Fed. Cir. 1987). Nor may a party "introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,* 460 F.3d 1349, 1358–59 (Fed. Cir. 2006). A party also waives any argument not raised in its opening brief on appeal. *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010).

Here, Synopsys urged the district court that there were no genuinely disputed material facts. JA3208; JA3212; *see also supra* Sections I.E and I.F.1. Moreover, Synopsys affirmatively conceded the single material fact identified by Mentor, JA2934 ("A skilled designer in this field can perform entirely in her mind, aided by pencil and paper, each step of each method claimed in the asserted patent claims."), not only to the district court, JA5631, but also in its opening brief on appeal, Appellant Br. 38–39 n.8. Similarly, neither in the district court nor in its opening brief did Synopsys assert a claim-construction dispute.

As Mentor noted in its reply brief supporting its motion for summary judgment, JA6304–05, Synopsys did not dispute any of the following points made in Mentor's motion for summary judgment:

- for each example of a logic-circuit description in the patents, a designer can perform the claimed method mentally in mere minutes;

- the named inventors performed the method of '841 claim 1 mentally when preparing their patent application;

- each example in the patents is so simple that a designer can recognize and hand-draw its described logic circuit, making it easier to perform the claimed translations of that description;

- each claim is directed to the thought process of inferring (deducing) what is described and translating its description into equivalent forms;

- the descriptions in the claims are an abstraction of a logic circuit;

- no claim requires translating a description of a complex computer chip;

- no claim requires translating more than a single, short logic-circuit description;

- no claim restricts who or what performs the method;

- no claim expressly requires a computer or other machine; and

- no claim implicitly requires a computer by requiring a complex or fast translation beyond a human's capabilities.

*Confidential Material Redacted*

It also was undisputed that conventional computers were capable of performing the claimed methods if so programmed. *E.g.*, JA2989 (Sarrafzadeh Decl. ¶ 105); *see also* JA60 ('841 patent 10:30–39) ("The particular … computer system used [is] not an essential aspect of this invention") ███████████████

████████████████████████████████████████

███████████████████████ And, it was undisputed that the claims-in-suit require no physical circuit or other physical element. *E.g.*, JA3210 (conceding that any manufacturing of a physical circuit happens, if at all, well "downstream" of the claimed methods); JA2988 (Sarrafzadeh Decl. ¶¶ 101–02)████████████

███████

Therefore, the sole narrow issue on appeal is whether the district court correctly held the claims-in-suit invalid under Section 101 in view of the uncontested claim constructions and facts.

### B.    The District Court Correctly Determined That The Asserted Patent Claims Encompass Patent-Ineligible Subject Matter

#### 1.    The *Mayo / Alice* Framework

As correctly recognized by the district court, the two-step *Mayo / Alice* framework governs the patent eligibility of the claims-in-suit. JA11 (SJ Order 5). This framework is applied to the representative patent claim as a whole, not to the specification. *See Mayo*, 132 S. Ct. at 1294; *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1335 (Fed. Cir. 2012) (rejecting the

patent owner's attempt to rely on some physical steps described in the specification because they were not recited in the claim), *aff'd in relevant part sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013).

Step one of the *Mayo / Alice* analysis requires courts to determine whether the patent claim is directed to an "abstract idea." Examples of abstract ideas include:

A.    "an idea, having no particular concrete or tangible form," *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715 (Fed. Cir. 2014);

B.    a "mental process," *Mayo*, 132 S. Ct. at 1293;

C.     a mathematical "algorithm," *e.g.*, *Parker v. Flook*, 437 U.S. 584, 588–89 (1978); and

D.    "gathering and combining data that does not require input from a physical device," *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

"An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment …." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Nor does it become nonabstract because it is "narrow and specific," *Mayo*, 132 S. Ct. at 1303; useful, *Flook*, 437 U.S. at 588; or novel, *id.* at 591.

Step one does not end the analysis. Being directed to a mental process or other abstract idea does not alone suffice to invalidate a patent claim. *E.g.*, *Diamond v.*

*Diehr*, 450 U.S. 175 (1981). On the contrary, "[a]ll inventions, at some level, 'embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1331 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2354). Therefore, if it is determined that the patent claim is directed to an abstract idea, then the analysis proceeds to step two.

Applying step two requires courts "to determine whether the claims do significantly more than simply describe th[e] abstract method." *Ultramercial*, 772 F.3d at 715. To do so, courts first must distinguish between claim limitations that describe (or are inherent in) the abstract idea versus those that recite "additional features." *Alice*, 134 S. Ct. at 2357; *see also Versata*, 793 F.3d at 1334 (distinguishing between "limitations … inherent in the abstract idea of determining a price using organization and product group hierarchies" and the "additionally claimed steps of storing, retrieving, sorting, eliminating and receiving").

This distinction is important because the step-two analysis is directed to "additional elements," if any, appended to the abstract idea. The Supreme Court made this distinction repeatedly in *Mayo* and *Alice*, by referring to these claim elements appended to the abstract idea (or natural law) as "additional elements," "additional features," "other elements," "additional steps," "other steps," steps "apart from" the abstract idea or natural law, and "what else is there?" *Alice*, 134 S. Ct. at 2355, 2357, 2358; *Mayo*, 132 S. Ct. at 1292, 1294, 1297, 1298, 1299, 1304.

For example, the "ordered combination" of "additional elements" the *Alice* Court analyzed in step two were the claims' "computer components," not the abstract idea identified in step one. *Alice*, 134 S. Ct. at 2359.

If the claim recites one or more such "additional elements," then a court must determine whether those added elements, individually or as an ordered combination, constitute an "inventive concept" sufficient to transform the nature of the claim into a patent-eligible application of the abstract idea. *Alice*, 134 S. Ct. at 2355. This "inventive concept" must be "in the physical realm of things and acts—a 'new and useful application' of the ineligible matter in the physical realm — that ensures that the patent is on something 'significantly more than' the ineligible matter itself." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2355, 2357, and citing *Mayo*, 132 S. Ct. at 1294, 1299, 1300). Routine, conventional elements or combinations of elements do not suffice. *Alice*, 134 S. Ct. at 2359. Nor does "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept." *Intellectual Ventures*, 792 F.3d at 1367.

### 2.    *Mayo / Alice* **Step One: The Claimed Idea Is Abstract**

### a)    **Each Claim Is Directed To An Abstract Idea**

The claims-in-suit are directed to the idea of translating a functional description of an existing, intangible logic element into its corresponding

28

assignment-condition description, and then into yet another abstract description of the same logic element. The entirety of representative claim 1 of the '841 patent is directed to this idea. Each claim shares this same concept. Some also translate the description into a graphical form, but that form, like the assignment-condition representation, is another way of thinking of and describing the logic functions of a logic element. Therefore, the parties agree that claim 1 of the '841 patent is representative.[3]

This idea is abstract.

**b)    The Claimed Idea Closely Resembles The Abstract Idea In _Benson_**

*Gottschalk v. Benson*, 409 U.S. 63 (1972), is a useful guidepost for reviewing the district court's determination that the claims-in-suit are directed to an abstract idea. *Cf. Mayo*, 132 S. Ct. at 1299 ("The claim before us presents a case for patentability that is weaker than the (patent-eligible) claim in *Diehr* and no stronger than the (unpatentable) claim in *Flook*."). The method claimed in *Benson* was "a method of programming a general purpose digital computer to convert signals from binary-coded decimal form into pure binary form." *Benson*, 409 U.S. at 65. In all

---

[3] *Cf. Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (rejecting argument that the district court must "individually address" each claim under Section 101, because the patent owner never asserted that the court should differentiate between the claims).

material respects under step one of the *Mayo / Alice* framework, the claims-in-suit are like the claims in *Benson*.

First, both methods are designed primarily for use with a computer. *Compare Benson*, 409 U.S. at 71 ("The mathematical formula involved here has no substantial practical application except in connection with a digital computer …."), *with* Appellant Br. 21 (noting the district court's finding that "the method is primarily intended for use with a computer," JA9–10 (SJ Order 3–4)).

Second, both methods nevertheless can be performed mentally without a computer. *Compare Benson*, 409 U.S. at 67 ("The mathematical procedures can be … performed without a computer."), *with supra* Section I.E.

Third, although both claimed methods can be performed mentally, they both differ from what a person ordinarily would do in her head aided by pencil and paper. *Compare Benson*, 409 U.S. at 67 ("The method sought to be patented varies the ordinary arithmetic steps a human would use by changing the order of the steps, changing the symbolism for writing the multiplier used in some steps, and by taking subtotals after each successive operation."), *with* Appellant Br. 31 (noting the district court's finding that "previously a designer would not have followed the exact same thought process" of the claims, JA16 (SJ Order 10)). In other words, neither claimed method preempts the ordinary manual method for achieving the claimed result.

*Confidential Material Redacted*

Fourth, neither method is limited to any particular or new machinery. For example, each covers practicing the method using a conventional, general-purpose computer. *Compare Benson*, 409 U.S. at 67 ("The mathematical procedures can be carried out in existing computers long in use, no new machinery being necessary."), *with* JA2989 (Sarrafzadeh Decl. ¶ 105); JA60 ('841 patent 10:30–39) ("The particular … computer system used [is] not an essential aspect of this invention");

██████████████████████████████

Fifth, the methods claimed in both *Benson* and the claims-in-suit convert one representation of an abstraction to another, equivalent representation of the same abstraction. In *Benson* the abstraction was a number; here it is a logic element.

Sixth, each method uses several specific steps to translate the representation, seven in *Benson*, 409 U.S. at 73–74, and two here.

There is one difference between the *Benson* claims and the idea claimed here, but that difference does not render the idea claimed here any less abstract. Specifically, the *Benson* claims are not limited to any field of use: "The end use may … vary from the operation of a train to verification of drivers' licenses to researching the law books for precedents …." *Id.* at 68. Consequently, they do not restrict the meaning of the numbers converted by the claimed method. The claims here, in contrast, *are* limited to a field (designing logic elements) and, therefore, do restrict the meaning of their descriptions translated by the claimed methods (*viz.*, they

describe the logic functions of an abstract logic element). But this one difference between the *Benson* claims and the claims-in-suit is immaterial to step one of the *Mayo* / *Alice* framework. *See Flook*, 437 U.S. at 589–90, 593 (finding a claimed method patent ineligible where data manipulated by the claimed method had a very specific meaning in a particular, claim-specified field of use).

Indeed, nearly all of the abstract ideas and natural laws identified by this Court and the Supreme Court are recited in claims limited to a particular field, and use information having a specific meaning in that field, including: the level of 6-thioguanine in a subject, *Mayo*, 132 S. Ct. at 1295; a price of a product, *Versata*, 793 F.3d at 1335; a request to review a sponsor message, *Ultramercial*, 772 F.3d at 712; color and spatial information content of an image, *Digitech*, 758 F.3d at 1347–48; and bingo numbers and player payments, *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1006 (Fed. Cir. 2014) (non-precedential).

### c)    The Claimed Idea Closely Resembles The Abstract Idea In *Digitech*

*Digitech* is another useful guidepost supporting the district court's determination that the claims-in-suit are directed to an abstract idea.

First, in both the *Digitech* claims and the claims-in-suit, the methods process information constituting a description. In the *Digitech* claims, the description is a "device profile," namely "a description of a device dependent transformation of spatial and color information." *Digitech*, 758 F.3d at 1349. Here, the description is

32

of an abstract logic element that may or may not be fabricated as part of a physical, current-carrying circuit. *See, e.g.*, ███████████████████ *see also supra* Section I.C.2.

Second, the *Digitech* claims "are not directed to any tangible embodiment of this information (*i.e.*, in physical memory or other medium) or claim any tangible part of [a] digital processing system." 758 F.3d at 1349. Here, too, the claims-in-suit recite no tangible machine or medium. *See supra* Sections I.C and I.D.

Third, the patent in *Digitech* "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." 758 F.3d at 1350; *see also id.* at 1351 ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."). The same is true of the claims-in-suit. The mathematical correlations here are logic relations among Boolean variables. Translating the same information from one equivalent form to another is a way of re-organizing the information, as can be seen from the example of Table 8, Table 9, and Fig. 8B (reproduced *supra* at 9).[4]

---

[4] In one sentence in its opinion, the district court characterized the claims-in-suit as describing, "in essence, various algorithms." JA12 (SJ Order 6). Synopsys's objection to the use of this term is too late. *See* Appellant Br. 40–42 & n.9. The court made the same reference at the summary judgment hearing: "Aren't these a series of algorithms?" JA2047 (SJ Hr'g Tr. 27:5–7), and Synopsys agreed, *id.* (27:8–11). Moreover, the district court's decision did not turn on its single use of this word "algorithm" that Synopsys accepted at the hearing. *See* JA12 (SJ Order 6).

And, the claimed reorganization of the representations of the logic relations is not tied to any particular machine or structure, just like *Digitech*.

In sum, under step one of the *Mayo / Alice* framework, there is no material difference between the claims-in-suit and the (patent-ineligible) claims in *Benson* and *Digitech*. Each is equally directed to an abstract idea.

### d)    The Claims Are Directed To An Idea Having No Particular Concrete Or Tangible Form

The idea recited in these claims—translating an existing functional description of an intangible logic element into its corresponding assignment-condition description, and then into yet another abstract description of the same logic element—is "an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715; *accord Versata*, 793 F.3d at 1333–34. This idea depends on no particular tangible thing. For example, whatever potential utility this idea has does not depend on any particular tangible instantiation of the logic-element descriptions. This idea is the same whether the existing, intermediate, or final description is a thought in one's mind, or markings on paper, or bits recorded on a computer disk. *See Ultramercial*, 772 F.3d at 715 ("The process of [multiple claimed steps] *all describe an abstract idea*, devoid of a concrete or tangible application." (emphasis added)).

In sum, because the claims are directed to an idea having no particular concrete or tangible form, they are directed to an abstract idea.

### e)    The Claims Are Directed To A Mental Process

Another indication that the claimed idea is abstract is that it can be and has been performed mentally without any computer. Even before *Mayo* reiterated that "mental processes … are not patentable," *Mayo*, 132 S. Ct. at 1293 (quoting *Benson*, 409 U.S. at 67), this Court explained that *Benson* "appeared to endorse the view that methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *see id.* at 1371–73 (invalidating claims directed to a "mental process," "which can be performed entirely in the human mind," "or by a human using a pen and paper," without use of a computer). This Court repeatedly has confirmed this principle. *E.g.*, *Intellectual Ventures*, 792 F.3d at 1368 (holding claimed calculations "unpatentable because they 'could still be made using a pencil and paper'" (quoting *CyberSource*, 654 F.3d at 1371)); *Versata*, 793 F.3d at 1335 ("'[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.'" (quoting *CyberSource*, 654 F.3d at 1373)); *Ass'n for Molecular*, 689 F.3d at 1324 (observing that the Supreme Court has considered the exceptions to patent eligibility as "precluding the patenting of mental processes"); *Planet Bingo*, 576 Fed. App'x at 1008 ("Like the claims at issue in *Benson*, not only can these steps be 'carried out in

existing computers long in use,' but they also can be 'done mentally.'" (quoting *Benson*, 409 U.S. at 67)).

Obviously, complex computer chips are not designed using pencil and paper. If they were, neither party would be in business. But, that is immaterial to the step-one analysis, for the same can be said for most of the mental processes addressed by the Supreme Court and this Court. *E.g.*, *Flook*, 437 U.S. at 586 ("Although the computations can be made by pencil and paper calculations, the abstract of disclosure makes it clear that the formula is primarily useful for computerized calculations producing automatic adjustments in alarm settings."); *Benson*, 409 U.S. at 71 (addressing an algorithm with "no substantial practical application except in connection with a digital computer").

Sometimes a patent owner's description of the alleged invention further demonstrates that the claims are directed to a mental process. In *CyberSource*, for instance, the Court cited a simple example of one of the claim's steps in the patent owner's brief to support its conclusion that the claim could be performed by hand:

> [A] person may "construct[ ] a map of credit card numbers" as required by step (b) by writing down a list of credit card transactions made from a particular IP address. There is no language in claim 3 or in the '154 patent's specification that requires the constructed "map" to consist of anything more than a list of a few credit card transactions. This is readily apparent from the appellant's brief, in which CyberSource provides a sample "map" that merely consists of four listed credit card transactions denoted by their dates, times, cardholder names, card numbers, IP addresses, transaction amounts, and shipping addresses.

36

*CyberSource*, 654 F.3d at 1372–73 (internal citation omitted).

Similarly here, Synopsys's brief reproduces from the patent an equally simple,

four-line example of the claimed method, which likewise can be performed by hand:

> The following are examples of the user descriptions of operational characteristics (on the left) and the corresponding circuit elements inferred (on the right):



FIG. 8B

JA66 (21:48–56).[3]

Appellant Br. 13–14.

This patent has 25 full or partial examples like this, and not one requires a

computer. It is undisputed that for each example in the patent, a skilled artisan can

perform the entirety of the claimed method in mere minutes using pencil and paper.

*See supra* Section I.E.

In sum, the idea recited in these claims is abstract for the further reason that it

can be performed mentally, aided by pencil and paper.

### 3. *Mayo / Alice* Step Two: The Claims Add No Inventive Concept To Their Abstract Idea

#### a) The Claims Add Nothing To Their Abstract Idea

The claims-in-suit add nothing to the abstract idea they describe. Everything in these claims is inherent to the abstract idea or describes the abstract idea. "The claimed methods here at issue do not entail anything physical." JA12 (SJ Order 6). In other words, "nothing" is the answer here to *Mayo*'s / *Alice*'s threshold query for step two: "what else is there?"

The claimed methods begin and end with an abstraction. They begin with an abstract, "hardware independent" description of an intangible logic element, not tied to any tangible medium. They end with an equivalent, and still abstract, description of the same intangible logic element, again not tied to any tangible medium. Bridging these two abstractions is the abstract idea itself, namely translating the initial abstract description of an intangible logic element into its corresponding assignment-condition description, and then into yet another abstract description of the same logic element. There is nothing else in these claims. They do not restrict what (or who) performs the method, nor restrict any tangible medium, if any, used by the method, nor restrict the application or use, if any, for the translated description resulting from the method. From start to finish, the claimed methods are entirely intangible.

Synopsys's brief identifies no "added element" in these claims. It identifies *nothing* added to the claims' translation idea.

This Court has encountered such purely abstract claims before. In *Ass'n for Molecular*, the Court determined that the claimed "step of comparing two DNA sequences is the entire process that is claimed," such that "the claims only recite mental steps." 689 F.3d at 1334–35. Similarly, in *Digitech* the Court determined that there was no additional element added to the claim's abstract idea. 758 F.3d at 1351. In each case, this Court rejected patent owner attempts to read into the claims physical elements described in the specification but not recited in the challenged claims. *Id.*; *Ass'n for Molecular*, 689 F.3d at 1335.

As the claims add nothing to their abstract idea, necessarily they add no "inventive concept" to their abstract idea.

### b)    The Claims Preempt Their Abstract Idea

Another indication that the claims-in-suit add no "inventive concept" is that they preempt all possible applications of their abstract idea. For example, if one performs the translation example of Tables 8 and 9 and Figure 8B, one will perform the method of '841 patent claim 1, period. It does not matter what, if any, device or machine or tangible medium one uses when performing that example translation, for the claim lacks any such restrictions on its scope. Nor does it matter what type of real-world application, if any, one has in mind when performing this translation, for the claim lacks any such restrictions on the downstream use, if any, of the translation.

### c)    The Claims Are Unlike Those
### In *Diehr* And *DDR Holdings*

These claims-in-suit lack the type of added elements this Court and the Supreme Court have found sufficient to impart patent eligibility under step two.

For example, the *Diehr* claims recite, in addition to their abstract idea, physical things, physical acts, and physical transformations of physical articles. Specifically, the *Diehr* claims recite a process of curing synthetic rubber, reciting a formula but also reciting additional, tangible steps, such as "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, … and automatically opening the press at the proper time." *Diehr*, 450 U.S. at 187. As later explained in *Alice*, this ordered combination of added elements—as distinct from the claims' mathematical algorithm—are inventive "because they improved an existing technological process." *Alice*, 134 S. Ct. at 2358. In contrast, the claims-in-suit recite no physical things, acts, or transformations, unconventional or otherwise. This is undisputed. *See supra* Sections I.C and I.D.

Nor are the claims-in-suit anything like those in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

First, the claims-in-suit recite no computer technology,[5] unlike the representative claim in *DDR Holdings*, which recited, *inter alia*, "a computer store,"

---

[5] As such, Synopsys's assertion that "it would be impractical to design modern ICs [integrated circuits] without a computer that could synthesize them," Appellant Br. 10, has no bearing on the patent eligibility analysis for these claims, which do not recite or require "ICs," "computers," or "synthesis."

**Confidential Material Redacted**

"web pages," a "web browser," and "a computer server … coupled to the computer store and programmed to … receive from the web browser of a computer user a signal … retrieve the stored data … and … automatically generate and transmit … a second web page." *Id.* at 1249–50; *see, e.g.*, JA2079–80 (SJ Hr'g Tr. 59:23–60:6).

Second, the claims-in-suit do not recite a "solution … necessarily rooted in computer technology." *DDR Holdings*, 773 F.3d at 1257. The claimed "solution" here requires no computer technology. Unlike the claimed methods in *DDR Holdings*, here skilled artisans can perform each claimed method for each example in the patent mentally, aided only by pencil and paper. ████████████

████████████████████████████████████

███████████████████████

Third, the claims-in-suit do not recite any improvement in computer technology. They fail even to provide "an instruction to apply the abstract idea … using some unspecified, generic computer," much less "effect an improvement in any … technology or technical field." *Alice*, 134 S. Ct. at 2359–60 (citing *Diehr*, 450 U.S. at 177–78). In *DDR Holdings*, by contrast, this Court found a computer-implemented method patent eligible where the claims recited a specific manipulation of a general-purpose computer such that they did not rely on a "computer network operating in its normal, expected manner." *DDR Holdings*, 773 F.3d at 1258–59. Those claims "specif[ied] how interactions with the Internet are manipulated to yield

a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1258. The Court distinguished this type of claimed technological manipulation from the "routine or conventional use" of existing technology to implement an abstract idea, even if that idea was previously unknown. *Id.* at 1258–59. But the claims-in-suit recite no operation of a computer or computer system, unconventional or otherwise.

Synopsys nevertheless seeks to shoehorn these claims into *DDR Holdings* by contending that the claimed methods "'improve the functioning of the computer itself.'" Appellant Br. 2, 33, 43 (quoting *Alice*, 134 S. Ct. at 2359). But the attempt fails because nothing in the claims or the record supports it. No claim recites, and no evidence supports, that the claimed translation improves how a computer performs its basic operations of, for example, performing calculations, reading and writing data from and to a memory, or transmitting data.

Synopsys also makes a related argument that conflates the claimed idea with an unclaimed use of the idea and is no more than a reprise of the legally unsound argument that an idea's utility makes it less abstract. *See infra* Section IV.C.4. Specifically, Synopsys argues that the claimed methods allow computers to do something they could not do before, namely, "enabling a computerized synthesis tool to infer particular logic circuits from hardware-independent, user descriptions in HDL." Appellant Br. 43; *see also id.* at 8, 33. In other words, Synopsys argues

that the claims-in-suit permitted computers to perform a function that previously only *human designers* could perform. *See supra* Section I.A.2 (discussing ability of skilled artisans to infer logic circuits from HDL user descriptions).

The claims-in-suit, however, do not recite or require computers doing anything at all. Necessarily, therefore, the claims do not recite an improved computer operation. The alleged benefit Synopsys touts is not one achieved by applying the abstract idea in some particular claimed, tangible way. Rather, it is inherent in the intangible idea itself. Many mathematical, algorithmic, and other abstract ideas have potential utility. That's why companies engage in both "research" and "development." But those *unclaimed, potential uses* do not render the idea any less abstract. *See Versata*, 793 F.3d at 1335 (rejecting a similar argument that "a specific approach … enable[d] the desired benefit for the computing environment" because, like here, it was undisputed that "these supposed benefits are not recited in the claims at issue"); *buySAFE*, 765 F.3d at 1353 (explaining that the "inventive concept" must be "a new and useful application of the ineligible matter in the physical realm" (internal quotation marks omitted)). Rather, claims directed to abstract ideas must be limited by additional elements that constitute an inventive concept. *See infra* Section IV.C.5. The claims-in-suit recite neither added elements nor a useful application in the physical realm. Therefore, the potential utility Synopsys cites for an unclaimed use of the abstract idea is irrelevant under the law.

Were this not the case, any beneficial formula, mathematical algorithm, or mental process capable of computer implementation would pass muster. But that is not the law. This Court has explained this distinction in rejecting past efforts to conflate utility of an abstract idea, which is immaterial under *Mayo / Alice*, with a useful improvement in tangible technology, as in *Diehr* and *DDR Holdings*:

> Examination of the claims—as a whole and in terms of each claim's limitations—reveals that the claims are not directed to improving computer performance and do not recite any such benefit. The claims are directed to price determination and merely use a computer to improve the performance of that determination—not the performance of a computer.

*Versata*, 793 F.3d at 1335.[6]

### d)  The Claims Fail The Particular Machine-Or-Transformation "Clue"

Another indication that the claims-in-suit lack an inventive concept added to the abstract idea is that they fail the "useful and important clue" of the particular machine-or-transformation test. *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). The claims do not recite any machine—particular or otherwise—in connection with any method step. *See supra* Sections I.C and I.D. They encompass (and thus preempt)

---

[6] Synopsys' reliance on *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014), is similarly unfounded. The claims at issue in that pre-*Alice* decision relate to an encryption system that purportedly "affect the communication system itself, by making it more secure." *Id.* at *7. The court also noted a factual dispute regarding whether or not the claimed "process can be performed in the human mind or with pencil and paper." *Id.* at *5. Again, Synopsys does not dispute that the methods of the claims-in-suit can be so performed.

performing the claimed method not only with any machine, but also with no machine. Therefore, the claims do not satisfy the "particular machine" prong.

Nor do the claims-in-suit satisfy the "particular transformation of a particular article" prong. *In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008) (en banc), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). The claims-in-suit do not recite any article, particular or otherwise. The claimed methods do manipulate data, but that also was true of the patent-*ineligible* claimed methods in *Benson*, *Flook*, *Alice*, and *Digitech*. *See CyberSource*, 654 F.3d at 1375 ("The mere manipulation or reorganization of data … does not satisfy the transformation prong.").

Moreover, Synopsys has waived any argument that the claims-in-suit satisfy the machine-or-transformation test by failing in its opening brief to challenge the district court's determination that they do not. *See* JA16–17 (SJ Order 10–11).

In sum, a straightforward application of the *Mayo / Alice* framework to the claims-in-suit compels affirmance of the district court's summary judgment that the claims are invalid under Section 101.

### C.    Synopsys Defends Imagined Claims With Incorrect Law

#### 1.    Claim 1 Requires Neither A Computer Nor Descriptions Of Complex Integrated Circuits

Despite conceding to the district court and again in its opening brief that the claims do not require a computer, *see* JA5631; Appellant Br. 38-39 n.8, and despite

*Confidential Material Redacted*

having waived any argument to the contrary, *see supra* Section IV.A, Synopsys

nonetheless repeatedly asserts or implies the opposite.

For example, Synopsys quotes testimony about a different patent in a different

case as if the testimony were discussing the representative patent claim in this case.

At the end of a sentence purporting to describe the method of claim 1 of the '841

patent, Synopsys appends this footnote: ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ But, Mentor's expert gave no

such testimony about claim 1 of the '841 patent or any other claim-in-suit. Instead,

Dr. Sarrafzadeh's unequivocal and unrefuted testimony was that the method of claim

1 can be performed by hand in mere minutes. JA2983–3016 (Sarrafzadeh Decl. ¶¶

79–81, 94, 112–30, 156, 194). What Synopsys cites for its mistaken assertion is

testimony in a different case about a different patent and a different claim. *See*

JA5392; JA5428–29.

As another example, Synopsys contends that the claimed method "requires an

EDA logic synthesis tool, consisting of computer software, to infer the appropriate

logic circuits (and their interconnections)." Appellant Br. 8. Again, this is incorrect,

and all of the evidence, including testimony of both named inventors and experts for both parties, is to the contrary. *See supra* Section I.E. For this assertion, Synopsys cites portions of the district court's order and its expert's declaration, but neither says anything of the kind. *See* JA8; JA6162.

Four pages later, Appellant Br. 12, Synopsys cites a paragraph (JA6170 ¶ 34) of the same expert declaration as support for the contention that the claims require use of specialized software with a computer, but that paragraph does not even mention a patent claim. Three pages later, Appellant Br. 15, Synopsys repeats that the claim requires a computerized synthesis tool, citing the claim and the district court's order, neither of which says that.

Synopsys makes the same mistaken assertion by representing that the term "infer" in this field requires a computer. *Id.* at 45. Synopsys implies that the claims-in-suit require a computer to "infer" or "automatically infer" a logic circuit, *e.g.*, *id.* at 1 n.1, 2, 8, 22, 28–30, 40. But, both of those points are incorrect. No claim or claim construction of these patents mentions "infer." Nor does the word "infer" require a computer in this art any more than in everyday English. For example, "inferring" is used in the fourth patent asserted by Synopsys—not at issue on this appeal—and there it was construed at Synopsys's request to mean "deducing." JA26; *see also* JA2975 (Thomas Dep. 124:4–18) (Synopsys expert using "infer" to reference human deduction of what logic element is required by a description of

*Confidential Material Redacted*

logic operations) ███████████████████████████████████

████████████████████████████████

This disregard for the *actual* claims-in-suit and their constructions permeates Synopsys's brief. About two dozen times it asserts or implies that the claims require imagined computer-related elements, including, for example, a "computer," "computerized process," "specialized software," "synthesis tool," "software tool," and "computer program." Synopsys's arguments about the significance of these imagined claim limitations are irrelevant.

Synopsys also incorrectly asserts that the claimed method necessarily translates descriptions of complex integrated circuits, adding that "[i]ntegrated circuits … contain millions or even billions of hardware components." Appellant Br. 4. For example: "In claim 1 of the '841 patent, for instance, a synthesis tool receives a specific written, hardware independent description of an IC an input …." *Id.* at 28. That assertion is incorrect in three ways. First, the claims as construed do *not* require a "synthesis tool" (as they can be performed mentally, for example). Second, they do not require a "written" description (as the form of the description is not specified). Third, they do not require the translation of descriptions of an integrated circuit having millions or billions of hardware components (as no claim recites more than a single logic element). *See, e.g.*, JA2987 (Sarrafzadeh Decl. ¶ 99).

As supposed record support for its above-quoted assertion, Synopsys cites 20 paragraphs of its expert's declaration. *Id.* But, those paragraphs do not even arguably support any of the three errors in Synopsys's assertion. Indeed, they do not even mention this patent claim or an integrated circuit. *See* JA6164–72.

Of course, the claimed methods are *broad enough to encompass* use on a computer to design an integrated circuit. But they do not *require* that restriction. In this respect, the claims-in-suit are comparable to those in *Planet Bingo*, which were broad enough to encompass use with millions of numbers and thousands of players, but did not require more than two sets of numbers and two players:

> Planet Bingo argues that in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program, making it impossible for the invention to be carried out manually. But the claimed inventions do not require as much. At most, the claims require two sets of Bingo numbers, a player, and a manager. We need not, and do not, address whether a claimed invention requiring many transactions might tip the scales of patent eligibility, as the claims fall far short of capturing an invention that necessarily handles 'thousands, if not millions' of bingo numbers or players.

576 Fed. App'x at 1008 (internal citations and quotation marks omitted).

## 2.   An Idea's Specificity Does Not Negate It Being Abstract

It is well-established that the abstract-idea exception applies "even if the particular ... abstract idea at issue is narrow." *buySAFE*, 765 F.3d at 1353. Yet, a central tenet of Synopsys's opening brief is that *only* broad "building blocks of ingenuity" are ineligible for patenting, and that some abstract ideas are just too

narrow or specific to be ineligible. *See, e.g.*, Appellant Br. 27, 35. Thus, Synopsys characterizes the methods of the claims-in-suit as including "specific steps," *id*. at 23, 29, 32, 33, "specific processes," *id*. at 32, "concrete steps," *id*. at 28, 30, "particular, concrete steps," *id.* at 2, and "complex, concrete steps," *id.* at 23, 39.

But the Supreme Court and this Court have rejected this notion expressly. The Supreme Court has warned courts *not* to distinguish broad abstract ideas from narrow abstract ideas, explaining that it had endorsed "a *bright-line prohibition* against patenting laws of nature, mathematical formulas and the like, which serves as a somewhat more easily administered proxy for the underlying 'building-block' concern." *Mayo*, 132 S. Ct. at 1303 (emphasis added). Thus, patent-ineligible subject matter may be "narrow and specific." *Id.*; *accord Bilski*, 561 U.S. at 599 (3-step risk-hedging method), *Flook*, 437 U.S. at 593, 596–97 (narrow mathematical formula held ineligible despite patent owner's contention that the claim implements a principle "in some specific fashion"); *Benson*, 409 U.S. at 73–74 (7-step mathematical algorithm); *Versata*, 793 F.3d at 1312–13 (7-step method for determining pricing); *Context Extraction*, 776 F.3d at 1345 (3-step method for digitizing and analyzing hard copy documents); *Ultramercial*, 772 F.3d at 712 (11-step method for distributing copyrighted media products over the Internet).

### 3.    An Idea's Novelty Does Not Negate It Being Abstract

Synopsys contends over and over that the claimed translation to and from assignment conditions is novel and not found in the prior art. But, even if that were so, the novelty of an abstract idea is not relevant under Section 101: "Laws of nature, natural phenomena, and abstract ideas [are patent ineligible] no matter how '[g]roundbreaking, innovative, or even brilliant' …." *buySAFE*, 765 F.3d at 1352 (second alteration in original) (quoting *Myriad*, 133 S. Ct. at 2117); *see also Ultramercial*, 772 F.3d at 714 (rejecting patent owner argument that abstract ideas are patent-eligible "as long as they are new ideas, not previously well known, and not routine activity"). An idea may be clever and abstract. For example, the claimed natural law in *Mayo* was not previously known: "[T]hose in the field did not know the precise correlations between metabolite levels and likely harm or ineffectiveness. The patent claims at issue here … identified these correlations with some precision." *Mayo*, 132 S. Ct. at 1295.

Synopsys cites *Flook* as support for its point, but its reliance is misplaced. Synopsys misdescribes *Flook* by incorrectly asserting that "the claims added a *known* algorithm to preexisting conventional techniques." Appellant Br. 37 (emphasis added). On the contrary, the algorithm in *Flook* was *novel*, not known: "The only novel feature of the method is a mathematical formula." *Flook*, 437 U.S. at 585; *see also id.* at 588 (noting "the examiner's finding, that the formula is the only novel feature of respondent's method").

### 4.    An Idea's Potential Utility
### Does Not Negate It Being Abstract

Synopsys argues that the claims-in-suit survive Section 101 scrutiny because the patents-in-suit purportedly disclose "new and useful" processes that "have helped transform an industry." Appellant Br. 25. This, too, is not the law.

First, even if the idea were useful and that utility were claimed, that would not save the claim. An idea may be potentially useful yet still be abstract. It may even be life-saving. *E.g.*, *Myriad*, 133 S. Ct. at 2110 (characterizing the discovery of the BRCA1 and BRCA2 genes as "important and useful"); *Flook*, 437 U.S. at 585, 588 ("novel and useful" formula designed to more accurately trigger alarms on potentially dangerous chemical reactions). Again, Synopsys misdescribes *Flook*, asserting that the mathematical algorithm "offered nothing new and useful." Appellant Br. 38. On the contrary, the *Flook* Court made the exact opposite point: "[W]e assume that respondent's formula is novel and useful and that he discovered it." 437 U.S. at 588.

Second, the idea's supposed utility is *unclaimed*. *See Versata*, 793 F.3d at 1335 (rejecting argument regarding alleged improvements in computer performance because "these supposed benefits are not recited in the claims at issue"). Nothing Synopsys touts as an advantage of these claimed methods over earlier methods is recited in the claims. As noted, these claims require neither a computer, nor software, nor translating more than a single logic element.

In sum, neither specificity, nor novelty, nor utility renders an abstract idea nonabstract under step one of the *Mayo / Alice* framework.

### 5.    Step Two Trains On The Added Elements, If Any, Not The Abstract Idea Itself

Synopsys's legal analysis of step two disregards a threshold issue. *Mayo / Alice* step two requires analysis of the elements, if any, *added* to the abstract idea. *E.g.*, *Versata*, 793 F.3d at 1332 ("[A] claim reciting an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize an abstract idea."); *Ultramercial*, 772 F.3d at 716 ("Adding routine additional steps … does not transform an otherwise abstract idea into patent-eligible subject matter."). The Court has referred to these added elements as the "non-patent-ineligible elements." *In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 763 (Fed. Cir. 2014) ("[W]e next ask whether the remaining elements, either in isolation or combination with the other *non-patent-ineligible elements*, are sufficient …." (emphasis added)).

Not all patent claims recite such "additional elements." As here, some recite *only* an abstract idea. *E.g.*, *Ass'n for Molecular*, 689 F.3d at 1335 ("[T]he claims only recite mental steps …."); *Digitech*, 758 F.3d at 1351 (finding nothing to analyze in step two because "nothing in the claim language expressly ties the method to an image processor," and holding that "[w]e therefore need not decide whether tying

the method to an image processor would lead us to conclude that the claims are directed to patent eligible subject matter"); *see also supra* Section IV.B.1.

Mentor consistently has asserted that the claims-in-suit add nothing to their intangible abstract idea. *E.g.*, JA5709–11. Yet, Synopsys's opening brief does not even purport to identify an added element. It identifies nothing in the representative patent claim that is not part of the abstract idea. As explained above, the entirety of the claim is the abstract two-step translation process. By failing in its opening brief to identify any "added element," as required by step two, Synopsys necessarily fails to identify one or more added elements constituting an "inventive concept." *See supra* Section IV.B.3.a.

### 6. Preemption Of The Claim's Idea In Some Field Is A Concern; Not Preemption Of Alternatives To The Idea

Although preemption of an abstract idea is not itself part of the *Mayo / Alice* two-step framework, it is an underlying concern. But, Synopsys misdescribes what must be preempted to trigger this concern. Synopsys argues that because the claims do not preempt *alternatives* to the idea they claim, they satisfy Section 101. For example, it argues that "[t]he asserted claims do not even preempt all automated methods of inferring the three logic elements addressed by the inventions." Appellant Br. 31. Synopsys goes so far as to suggest that because Mentor identified non-infringing alternatives, the claim must not preempt all alternatives in this field

and therefore must pass the Section 101 threshold. *See id.* at 31–32. Under this theory, a defendant who denies infringement would thereby forfeit its defense under Section 101.

This is not the law. A competitor need not admit infringement to assert invalidity under Section 101. The issue is not whether the claim preempts *alternatives* to the claimed idea. No patent claim preempts alternatives to what it claims. The underlying concern instead is whether the claim preempts substantially all use *of the abstract idea described by the claim*—which idea may be specific and narrow—in some technological field. *See, e.g.*, *Bilski*, 561 U.S. at 611–12 (refusing eligibility for claims limiting hedging idea to commodities and energy markets).

Both this Court and the Supreme Court have rejected Synopsys's espoused position. For example, the patent-ineligible mental process in *Benson* preempted the seven-step, computer-oriented method recited in the claim, but did *not preempt* the alternative, human-oriented, table-lookup way of achieving the same result. *Benson*, 409 U.S. at 67, 73–74; *accord OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) ("And that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."); *BRCA1*, 774 F.3d at 764 n.4 ("The preemptive nature of the claims is not ameliorated even if we accept Myriad's argument that other methods

of comparison exist. If the combination of certain routine steps were patent eligible, so too would different combinations of other routine steps.").

### 7. The Supreme Court Has Not Mandated That The Abstractness Exclusion Be "Construed Narrowly"

Finally, Synopsys contends that the Supreme Court "has indicated that the [abstractness] exception should be construed narrowly." Appellant Br. 26. That is inaccurate and is belied by this Court's body of post-*Alice* decisions, only one of which Synopsys chose to mention in its opening brief. While the Supreme Court has noted that it "tread[s] carefully in construing this exclusionary principle," *Alice*, 134 S. Ct. at 2354, it also has characterized the abstractness exclusion as "important," and has endorsed a "bright-line prohibition" against patenting abstract ideas, *Mayo*, 132 S. Ct. at 1293, 1303. That important, bright-line prohibition invalidates the claims-in-suit.

### CONCLUSION

The issue on this appeal extends no further than the actual patent claims-in-suit. It is not whether some patent drafter might have been able to draft patent-eligible claims based on this specification. Nor is it whether "logic synthesis" inventions in general can be patented. The district court understood this and properly trained its attention on the claims and undisputed record before it—not an imagined claim and not a different claim in a different patent in a different lawsuit. These claims-in-suit are not computer claims or software claims. Rather, these patent

claims reside at a higher level of abstraction. They are directed solely to an intangible thought process *per se*, and thus plainly fail the subject matter eligibility requirement.

The district court applied the correct law to the actual claims-in-suit to reach the correct result, and its judgment should be affirmed.

> Respectfully submitted.
>
> /s/John D. Vandenberg
> John D. Vandenberg
> Philip Warrick
> KLARQUIST SPARKMAN, LLP
> One World Trade Center
> 121 S.W. Salmon Street, Suite 1600
> Portland, Oregon 97204-2988
> (503) 595-5300
> john.vandenberg@klarquist.com
> philip.warrick@klarquist.com
>
> *Counsel for Defendant-Appellee*
> *Mentor Graphics Corporation*
>
> September 11, 2015

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

Synopsys, Inc. v. Mentor Graphics Corporation, No. 2015-1599

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KLARQUIST SPARKMAN, LLP, Attorneys for Appellee, to print this document.  I am an employee of Counsel Press.

On **September 11, 2015,** counsel has authorized me to electronically file the foregoing **Brief for Defendant-Appellee (Confidential and Non-Confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Carter G. Phillips (Principal Counsel)
Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
cphillips@sidley.com
rmorris@sidley.com

David T. DeZern
SIDLEY AUSTIN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
(214) 981-3315
ddezern@sidley.com

M. Patricia Thayer
Philip W. Woo
SIDLEY AUSTIN LLP
555 California Street,
Suite 2000
San Francisco, CA 94104
(415) 772-7428
pthayer@sidley.com
pwoo@sidley.com

The confidential brief will also be emailed to the above counsel on this date and Paper copies of each will be mailed to the above principal counsel on this date.

Upon acceptance by the Court of the e-filed document, six paper confidential copies will be filed with the Court within the time provided in the Court's rules.

September 11, 2015                                        /s/ Elissa Matias
                                                          Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

_ X _ The brief contains _ 13,064 _ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

_ X _ The brief has been prepared in a proportionally spaced typeface using MS Word 2013 _ in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


September 11, 2015 _____       /s/John D. Vandenberg _____
                                John D. Vandenberg
                                KLARQUIST SPARKMAN, LLP
                                Counsel for Defendant-Appellee
                                Mentor Graphics Corporation